IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:16-CV-00025-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| ROUSECO, INC., | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's renewed motion for summary judgment. (DE 45). The motion has been fully briefed, and the issues presented are ripe for ruling. For reasons noted, the motion is granted.

**STATEMENT OF THE CASE**

This case arises under the Fair and Equitable Tobacco Reform Act ("FETRA"), 7 U.S.C. § 518 et seq., which directs the United States Department of Agriculture ("USDA"), through the Commodity Credit Corporation ("CCC") (collectively, "the agencies"), to impose on tobacco manufacturers and importers reporting requirements and quarterly monetary assessments ("quarterly assessments") based upon participation in the market for tobacco products between fiscal years 2005 and 2014. During those years, defendant was a tobacco manufacturer based in Kinston, North Carolina and was subject to FETRA's reporting requirements and quarterly assessments.

Plaintiff initiated a prior action in this district March 1, 2011, on behalf of the agencies, seeking to enforce administrative determination that defendant is liable for unpaid quarterly

assessments, penalties for failure to satisfy reporting requirements ("failure to report penalties"), and late-payment interest for fiscal years 2008 through 2010. See United States .v Rouseco, Inc., No. 4:11-CV-35-F, 2013 WL 1122839 (E.D.N.C. Mar. 18, 2013) ("Rouseco I"). In Rouseco I, the district court remanded the case to the agencies for further consideration. That case came to a close as the Fourth Circuit granted the parties' joint motion to dismiss plaintiff's appeal.

Following proceedings on remand, plaintiff initiated this action March 8, 2016, again seeking to enforce its determination of plaintiff's liability for quarterly assessments, failure to report penalties, and late-payment interest. This action embraces claims that previously were before the court in Rouseco I and unpaid quarterly assessments and late-payment interest pertaining to fiscal years 2011 through 2014. Plaintiff does not allege that defendant incurred any additional failure to report penalties after fiscal year 2010. Count one of the complaint embraces quarterly assessments. Count two embraces failure to report penalties. Plaintiff seeks pertinent late-payment interest in both counts.

Plaintiff filed the instant motion July 7, 2017. In support, plaintiff relies on the revised administrative record ("RAR")[1] and affidavit of Darlene A. Soto. In opposition, defendant relies on the same evidence; and, in addition, affidavit of Franklin Rouse and attachments thereto; and affidavit of defense counsel Thomas Babel and attachments thereto.

## STATEMENT OF THE UNDISPUTED FACTS

The undisputed facts viewed in the light most favorable to defendant may be summarized as follows. This action constitutes plaintiff's second action for judicial enforcement of a series of

---

[1] The revised administrative record is lodged on the docket at entries 48 through 53. For ease of reference, the court cites the revised administrative record by reference to bates stamp numbers appearing thereon rather than to any CM/ECF docket entry numbers.

invoices issued by the agencies under FETRA. Where it accurately summarizes the undisputed facts pertinent to claims embraced by Rouseco I, the court incorporates herein relevant portions of that statement of facts pertinent to the court's order denying summary judgment and remanding the case, as follows:

> There is no dispute that Defendant is a manufacturer of tobacco products located in Kinston, North Carolina, and that Defendant paid assessments imposed pursuant to FETRA from September of 2005 to June of 2007.
>
> Thereafter, Defendant was sent additional written quarterly assessments, including quarterly assessments in March of 2008, payment due March 30, 2008. In December of 2010, Defendant was sent quarterly assessments (referred to as "Non-Reporter Assessment" on the government's summary sheet) for the entire period of March of 2008 to December of 2009, payment due January 30, 2011. Defendant did not pay the amounts assessed or file an administrative appeal as provided for in 7 U.S.C. § 518d(i).
>
> In June of 2011, after the Complaint in this action was filed, Defendant was sent quarterly assessments (referred to as a "True-Up Adjustment" on the government's summary sheet) for the entire period of March 2010 to December of 2010, payment due June 30, 2011. Defendant did not pay any of the amount assessed or file an administrative appeal as provided for in 7 U.S.C. § 518d(i).
>
> In December of 2010, Defendant was sent penalty invoices for 2008 and 2009, payment due January 30, 2011. In December of 2011, Defendant was sent penalty invoices for 2010, payment due January 30, 2012. Defendant did not pay any of the amounts assessed or file an administrative appeal as provided for in 7 U.S.C. § 518d(i).
>
> As stated by the government, the administrative record indicates that Defendant failed to submit certain required reports, including all such forms since 2008.

Rouseco I, 2013 WL 1122839 at * 3 (citations omitted).

Because defendant failed to provide required FETRA reports, the agencies maintained that they were authorized to estimate the value of defendant's products subject to FETRA assessments, using defendant's tax information obtained from the Alcohol and Tobacco Tax and Trade Bureau

("TTB"), which agency is charged with collecting tobacco excise taxes for purposes of the Internal Revenue Code. See 6 U.S.C. § 531(c)(2) ("There shall be retained within the Department of the Treasury the authorities, functions, personnel, and assets of the Bureau of Alcohol, Tobacco and Firearms relating to the administration and enforcement of chapters 51 and 52 of Title 26 . . ."); 27 C.F.R. § 40.41 (authorizing designated TTB officer to require appropriate forms); ATF Form 5000.24 (collecting tax liability information about the same about classes of tobacco products regulated by FETRA); 7 U.S.C. § 518d(h)(2)(B) (authorizing the CCC to assess FETRA liability based upon information contained in ATF From 5000.24). Using information obtained from the TTB, the CCC determined that, as of December 1, 2010, defendant owed $346,506.76 in unpaid quarterly assessments. See Rouseco I, No. 4:11-CV-35-F, Pl.'s comp. DE 1 ¶ 14 (E.D.N.C. Mar. 1, 2011).

In addition, using information obtained from the internet to estimate the market value of defendant's products, plaintiff imposed failure to report penalties of $5,060,647.84, see id. ¶ 15, and moved for summary judgment in Rouseco I seeking to enforce these assessments and penalties. See Rouseco I, No. 4:11-CV-35-F, Pl.'s Mot. Summ. J. DE 21 (E.D.N.C. Feb. 27, 2012). The Rouseco I court denied plaintiff's motion for summary judgment by order dated March 18, 2013, on the ground that "the court finds that it cannot conclude that the actions of the [plaintiff] are rationally based on the statutory directives of FETRA. Rather, although the fact that assessments and penalties have been imposed is clear, the administrative record lacks sufficient bases to conclude that the agency's actions comport with the statutory directive that a manufacture pays only the amount correctly determined." Rouseco I, 2013 WL 1122839 at * 3.

Following denial of plaintiff's motion, the Rouseco I court entered judgment, which reads,

in relevant part, as follows: "This matter is REMANDED to the agency for further proceedings, at which time all information included in FETRA mandated reports, even if belatedly filed, shall be considered, as well as any other information allowed by FETRA." Rouseco I, No. 4:11-CV-35, DE 78, (E.D.N.C. Mar. 18, 2013). Plaintiff appealed the judgment, but that action came to a close June 5, 2013, after the Fourth Circuit Court of Appeals granted the parties' stipulated motion to voluntary dismiss. Ruscoe I, No. 13-1657 (4th Cir. June 4, 2013).

On remand, the agencies acquiesced in defendant's request to reduce failure to report penalties to $1,273,932.00 and additional late payment interest resulting in total penalty, including interest, of $1,284,684.97. See RAR 986 (calculating penalties using "[w]eighted average using sales product information received from Babel on/about Fall 2012"). Although it reduced total failure to report penalty in this manner, nothing before the court indicates that CCC ever agreed that it had, in fact, overestimated the market value of defendant's products or that its use of pricing data obtained from the internet was improper. See id.

Initially, plaintiff declined to recalculate any quarterly assessments, maintaining that where defendant failed to pursue administrative appeal, any quarterly assessments were not subject to judicial review. (See DE 26-1 at 6 ("On remand, CCC used the late reports and other documents submitted by Rouseco and recalculated the penalties . . .") (emphasis added)). Plaintiff maintained that the judgment in Rouseco I implied nothing to the contrary, (see id. at 7 ("CCC did not re-calculate the . . . quarterly assessments . . . partly because the Court recognized that . . . [Rouseco] was statutorily prohibited from seeking judicial review of those assessments.")). Nonetheless, on February 8, 2017, plaintiff withdrew its initial motion for summary judgment, (see DE 34), which earlier-filed motion reflected no recalculation of quarterly assessments. (See DE 26). Since that

5

time, plaintiff has undertaken to recalculate defendant's liability for quarterly assessments, failure to report penalties, and late-payment interest for all fiscal years affected by the FETRA program. (See Soto Dec., DE 44 ¶ 24).

Upon recalculation, plaintiff found that assessments for fiscal years 2005 though 2008, and fiscal years 2010 though 2014 were correct. (Id. ¶ 25–26). However, plaintiff found that it had overcharged defendant by $119,119.74 for fiscal year 2009 and undercharged defendant by $199,967.27 for fiscal year 2010, resulting in a net liability increase of $80,847.80. (Id. ¶ 27). Citing "exercise[ of] its discretion[,]" (DE 46 at 12), plaintiff does not now seek to recover this additional $80,847.80. (Id.). Defendant's final claim for all unpaid quarterly assessments between fiscal years 2005 and 2014, including interest, is $5,040,827.57. (Id. ¶ 34).

During its review, plaintiff also determined that it overcharged defendant for failure to report penalties where its $1,284,684.97 penalty assessment included a $345,417.00 penalty for fiscal year 2011, which the CCC previously waived. (Id. ¶ 38). Finally, plaintiff further reduced penalties for fiscal years 2008 though 2010 by $129,278.18 based upon pricing data submitted by defendant. (Id. ¶ 39). Accordingly, with respect to failure to report penalties, plaintiff seeks to recover $828,608.89. (Id.).

Plaintiff communicated the foregoing calculations to defendant no later than April 18, 2017, via e-mail correspondence to defendant's counsel. (Id. ¶ 40). Defendant treated the April 18, 2017, communication as an appealable assessment, and filed administrative appeal with the USDA on April 27, 2017. (DE 60 ¶ 9). Defendant's April 27, 2017, communication constitutes the first and only putative administrative appeal that defendant has undertaken since inception of the FETRA program. (Id.). By latter dated May 23, 2017, the USDA dismissed the appeal on the ground that

where plaintiff's April 18, 2017, letter demanded payment on only a subset of the plaintiff's actual liability, such demand for reduced payment constituted no adverse determination from which plaintiff was entitled to take an appeal. (DE 44 ¶ 42).

Following these events, the instant motion ripened August 30, 2017.

**DISCUSSION**

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to

be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

The parties dispute whether this court has discretion to engage in substantive examination of quarterly assessments, failure to report penalties, and late-payment interest amounts charged against defendant, or whether the court's function is limited, on the facts of this case, to enforcement the USDA's determination as a final administrative decision.

Under FETRA, a regulated manufacturer or importer of tobacco products may file an administrative appeal before the USDA within 30 days of receiving a notice of quarterly assessment or failure to report penalty. 7 U.S.C. § 518d(i)(1). During pendency of appeal, the appellant must pay any undisputed portion of a challenged assessment and must place any disputed portion in an

8

escrow account pending resolution of appeal. Id. § 518d(i)(5). Following administrative appeal, the unsuccessful appellant is entitled to judicial review "at any time following exhaustion of administrative remedies . . . ." Id. § 518d(j)(1).

Defendant's challenge to the Secretary's determination of FETRA liability is before the court in the posture of answer to plaintiff's complaint and response in opposition to plaintiff's motion for summary judgment. (DE 11, 75). In this manner, defendant's challenge does not comport with the statutory requirements to invoke judicial review, which plainly require appeal to the Secretary of Agriculture within 30 days of a disputed quarterly assessment or failure to report penalty, prompt payment of undisputed amounts, and transfer of disputed amounts into an appropriate escrow account. See 7 U.S.C. § 518d(i)(1) & (5). The undisputed facts establish that defendant followed none of the foregoing rules. (DE 60 ¶ 9 (acknowledging that defendant's only putative appeal was filed April 27, 2017)). Accordingly, the agencies' quarterly assessments and failure to report penalties became enforceable as final administrative adjudications 30 days after each was received by defendant, long before defendant filed its first putative administrative appeal. 7 U.S.C. § 518d(j)(1).

Defendant advances argument on several grounds that its failure to comply with the review provisions of 7 U.S.C. §§ 518d(i) & (j) do not preclude its opposition to plaintiff's claims. First, defendant contends that where plaintiff originally used TTB excise tax information to calculate quarterly assessments for fiscal years 2008 and 2010 and used information obtained from the internet to estimate the value of defendant's products for purposes of calculating allowable failure to report penalties, plaintiff acted outside its jurisdiction. Defendant characterizes such action as ultra vires and contends that such action excuses any failure to appeal quarterly assessments for

9

fiscal years 2008 though 2010 and failure to report penalties.

This court possesses authority to strike down an agency order "made in excess of its delegated powers and contrary to a specific prohibition . . ." Leedom v. Kyne, 358 U.S. 184, 188 (1958). Where, as here, a party seeks judicial review outside the scope of statutory review provisions on the ground that an agency acted in excess of its delegated powers, the court conducts "a cursory review of the merits to determine if the agency acted clearly beyond the boundaries of its authority." Long Term Care Partners, LLC, v. United States, 516 F.3d 225, 234 (4th Cir. 2008). "If the agency offered a plausible interpretation of the relevant statute" the court must find that "it did not violate a clear statutory mandate." Id.

Here, a cursory review of the merits discloses that the agencies are charged with administering FETRA, see 7 U.S.C. §§ 518d(b)(1), defendant is within the class of tobacco manufacturers and importers subject to FETRA, (DE 11 ¶ 11 ("Rouseco admits that it is a manufacturer of tobacco products.")); and that the quarterly assessments and failure to report penalties in issue here are the type of assessments authorized by FETRA. See 7 U.S.C. §§ 518d(b)(1). These facts are sufficient to establish that the agencies did not act outside the scope of their delegated powers upon issuing quarterly assessments and failure to report penalties to defendant. See Leedom, 358 U.S. at 188; Long Term Care Partners, 516 F.3d at 234. Moreover, FETRA authorizes the agencies to determine the volume of domestic sales on the basis of reports described in 7 U.S.C. § 518d(h)(2), or on the basis of "any other relevant information provided to or obtained by the Secretary." 7 U.S.C. § 518d(g)(1). "[O]ther information available to the Secretary" plausibly may include tax information collected by the TTB, where the TTB, through ATF Form 5000.24, collects pertinent information about tobacco manufacturers' production volume,

which production volume is relevant to determining FETRA quarterly assessments. 7 U.S.C. § 518d(d)(2)(E)–(F) (quarterly assessments based upon manufacturers' and importers' market share in tobacco products). Therefore, where originally the agencies relied upon tax information obtained from the TTB to calculate defendant's liability for quarterly assessments, the agencies did not act outside the bounds of "a plausible interpretation of the relevant statute." See Long Term Care Partners, 516 F.3d at 234.

Similarly, with respect to failure to report penalties, the Secretary must not impose any penalty greater than two percent of the value, "as determined by the Secretary[,]" of a regulated party's tobacco products. 7 U.S.C. § 518d(h)(3). A cursory review of the merits discloses that where plaintiff originally used pricing data obtained from the internet to estimate values of defendant's products, resort to evidence of that nature is within a "plausible interpretation of the relevant statute[,]" where the open-ended language "as determined by the Secretary" does not clearly prohibit value estimates based upon pricing data hosted on internet websites. See Long Term Care Partners, 516 F.3d at 234. Accordingly, defendant's failure to comply with FETRA's review provisions may not be excused on the grounds the agencies acted in excess of their jurisdiction or contrary to a clear statutory mandate. See id.

Second, defendant argues that a futility exception applies to FETRA's exhaustion requirement. Specifically, defendant contends that where the parties previously were engaged in settlement negotiations, any further formal administrative proceedings would have failed to enable the government to prepare for settlement negotiations, which, according to the unpublished Seventh Circuit opinion cited by defendant, is one of the purposes of administrative exhaustion. See Ward v. United States, 1 F.Appx. 511, 514 (7th Cir. 2001) (noting that the purpose of administrative

11

exhaustion "is to provide the government with sufficient notice to investigate the claim and prepare for settlement negotiations."). Defendant argues also that where the USDA wrote a letter to a party in an unrelated case to the effect that the administrative appeals process cannot be used to "challenge to statutory or regulatory provisions or any mathematical formula or other procedure or policy that is generally applicable to all similarly situated participants[,]" Swisher Intern., Inc. v. Johanns, No. 3:05-CV-871-J16-TEM, 2007 WL 4200816, at *1 n.3 (M.D. Fla. Nov. 27, 2007), any challenge to quarterly assessments, failure to report penalties, or interest thereon would have been futile.

A statutory requirement of exhaustion of administrative remedies sometimes may be waived "where exhaustion would be futile or inadequate." See Honig v. Doe, 484 U.S. 305, 326–27 (1988). However, defendant has made no showing that administrative appeal would have been futile. First, the fact that the parties were engaged in settlement negotiations is of no moment. To engage in settlement negotiation while preserving the agencies' ability to continue to assess their case, defendant could have filed its administrative appeal and requested that the USDA stay resolution of appeal pending outcome of settlement negotiations. Thus, defendant's argument that filing an administrative appeal would have prevented the agencies from continuing to investigate the case is without merit. Second, the USDA's litigation position in Swisher, even assuming that position binds the USDA now, does not render appeal futile here. Specifically, even assuming as defendant argues, that it was a foregone conclusion that the USDA would have rejected any contention that it was legally prohibited from using TTB tax information to calculate quarterly assessments or data from the internet to calculate failure to report penalties, USDA still was free to rule in defendant's favor on the ground that defendant's proffered data was more reliable than the data the agencies used initially. That this avenue was open to defendant negates any inference of futility. See Honig, 484

U.S. at 326–27.

Third, defendant argues that FETRA's exhaustion requirement is non-jurisdictional and may be waived. This argument is inapposite for at least two reasons. First, a rule simultaneously may be non-jurisdictional yet mandatory, see Kontrick v. Ryan 540 U.S. 443, 444–45 (2004) (holding that certain rules may be "unalterable on a party's application" but non-jurisdictional). Where it allows judicial review "at any time following exhaustion of [administrative remedies,]" 7 U.S.C. § 518d(j)(i) (emphasis added), FETRA's judicial review provisions establish a rule that is "unalterable on a party's application[,]" and therefore mandatory, regardless whether it is jurisdictional. See Kontrock, 540 U.S. at 444–45. Second, defendant cites Ace Prop. and Cas. Ins. v. Fed. Crop Ins. Corp., 440 F.3d 992, 996–97 (8th Cir. 2006), for the proposition that the court may waive a non-jurisdictional exhaustion requirement in certain circumstances. The Eight Circuit holds that the pertinent circumstances for waiver obtain "if the complaint involves a legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative procedures would be futile, or if the issues to be decided are primarily legal rather than factual." Id. at 1000. As held above, no futility exception applies. Moreover, defendant asserts no constitutional claim, nothing indicates that exhaustion would cause irreparable harm, and the appealable issues include factual questions about the whether defendant possessed more reliable evidence pertinent to determination of quarterly assessments and failure to report penalties. See id. Accordingly, assuming without deciding that the Ace court's doctrine surrounding waiver of a non-jurisdictional exhaustion requirement is correct, it is unavailing to defendant here. See id.

Fourth, defendant argues that it effected a valid appeal of the determination in issue on April 27, 2017. This argument fails where the administrative record discloses that the CCC issued its

13

latest invoice for failure to report penalties no later than December 31, 2009, see RAR 870 (Fiscal year 2010 penalty invoice, payment due January 30, 2010; (Soto Aff., DE 44 ¶ 16 ("Rouseco . . . was provided 30 days to contact the CCC to dispute all or part of the penalty.")); and its latest invoice for a quarterly assessment December 1, 2014. See RAR 854. Therefore, appeal filed April 27, 2017, is untimely as outside the 30-day window for administrative appeal under FETRA. See 7 U.S.C. § 518d(i)(1).

Defendant's argument that e-mail transmission dated April 18, 2017, is an appealable "adverse determination" in unavailing for two reasons. First, where the transmission serves to apprise defendant of plaintiff's settlement position, that transmittal properly is characterized as a courtesy notice of such position. Second, where all quarterly assessments and failure report penalties became due and owing upon plaintiff failure to pursue timely appeal, which deadline elapsed no later than December 31, 2014, any decision by plaintiff to seek enforcement of a subset of that liability before this court is properly characterized as an exercise of discretion rather than a new determination. That is, the court construes plaintiff's various decisions to seek recovery of a subset of final liability, as exercise of the principle that a plaintiff is "master of its complaint"[2] and, therefore, may seek less than the full remedy to which it is entitled. Pittston Co v. U.S., 199 F.3d 694, 710 (4th Cir. 1999) ("Pittston was the "master of its complaint" and even though its constitutional claims were available, it chose not to raise them . . ."). Accordingly, characterization of e-mail transmission dated April 18, 2017, is governed by the foregoing principle of pleading rather than any doctrine of administrative law. In this manner, defendant's argument that it effected

---

[2] Plaintiff has not sought leave to amend the complaint, but where Rule 15 of the Federal Rules of Civil Procedure allows amendments to the complaint as late as trial, see Fed. R. Civ. P. 15(b)(1), the fact that plaintiff has presented its waiver of certain claims by limiting the scope of its motion for summary judgment rather than by amending the complaint is no obstacle to said waiver.

valid appeal is unavailing.

Fifth, defendant argues that the USDA improperly dismissed its April 27, 2017, appeal and that plaintiff's April 18, 2017, courtesy notice violates FETRA's procedural requirements for an assessment in various respects. However, these arguments are without merit where, as held above, plaintiff's April 18, 2017, courtesy notice is not an assessment. Therefore, defendant's April 27, 2017, communication is legally ineffective as an appeal. While FETRA does not authorize expressly the USDA to "dismiss" an appeal, where appeal is available only to "contest an assessment[,]" dismissal is, nonetheless, the appropriate action when a putative appeal embraces non-appealable subject matter, such as plaintiff's April 18, 2017, courtesy notice. Id.

Sixth, defendant argues that plaintiff's calculation of liability described in the April 18, 2017, courtesy notice lacks supporting information and is not credible. However, this argument fails because issues of adequacy of supporting information and credibility of plaintiff's evidence are not now before the court. See 7 U.S.C. 518d(i)(1). Rather, where defendant failed to exhaust administrative remedies, plaintiff's quarterly assessments, failure to report penalties, and interest assessed thereon became enforceable as final administrative determinations as the 30-day deadline for appeal passed with respect to each assessment. See id. Therefore, defendant waived by inaction its opportunity to challenge the strength of plaintiff's evidence as appeal deadlines elapsed. See id; Kontrick, 540 U.S. at 444–45 (mandatory rules unalterable on a party's application).

Finally, at various points throughout its response in opposition to the instant motion, defendant suggests that plaintiff's actions stand in violation of final judgment entered in Rouseco I, which remanded the case to the agencies and directed that "all information included in FETRA mandated reports, even if belatedly filed, shall be considered, as well as any other information

allowed by FETRA." Rouseco I, No. 4:11-CV-35, DE 78, (E.D.N.C. Mar. 18, 2013). The Rouseco I court rested its assertion of authority to review and remand the agencies' decision on a standard of review borrowed from Maryland Native Plant Society v. U.S. Army Corps of Engineers, a district court case that involved environmental claims governed by the judicial review provisions of the Administrative Procedure Act ("APA"). 332 F.Supp.2d 845, 854–55 (D. Md. 2004). No party has argued that the APA has any application this to case, and the court does not now undertake to determine whether it might. Nonetheless, nothing in the APA abrogates an otherwise valid exhaustion requirement. See Darby v. Cisneros, 509 U.S. 137, 144 (1993) ("[W]ith respect to action brought under the APA, Congress effectively codified the doctrine of exhaustion of administrative remedies in [the APA's judicial review provisions]."). Accordingly, to any extent the Rouseco I court held that the court may review the agencies' decisions despite failure to exhaust administrative remedies, this court does not follow the reasoning of Rouseco I.

Nonetheless, where the Fourth Circuit granted the parties' joint motion to voluntarily dismiss appeal of Rouseco I, the judgment of Rouseco I became final. As such, this court is bound to honor that judgment according to its terms. Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218–19 (1995) (holding that Article III "gives the Federal Judiciary the power, not merely to rule on cases, but to decide them, subject to review only by superior courts in the Article III hierarchy . . .) (citations omitted) (emphasis in original). With deference to the terms of the Ruscoe I judgment, the agencies have complied with its requirements. Specifically, the agencies undertook to reconsider failure to report penalties in light of belatedly-filed information pertinent to the value of defendant's products, and the agencies undertook to reconsider all quarterly assessments in light of evidence submitted by defendant, albeit during pendency of this litigation. (See DE 44 ¶ 24–30). The Rouseco I

16

judgment can be read to require no more. Thus, to the extent defendant opposes the instant motion on grounds that plaintiff failed to comply with the judgment of <u>Rouseco I</u>, defendant's arguments are unavailing.

In sum, defendant's failure to exhaust administrative remedies is not excused. 7 U.S.C. § 518d. Accordingly, defendant waived its rights to challenge any quarterly assessments, failure to report penalties, or interest thereon as imposed by administrative action of the agencies. <u>See id.</u> Therefore, plaintiff's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment, (DE 45), is GRANTED. It is DECLARED, ADJUDGED, and DECREED that defendant is liable for quarterly assessments, failure to report penalties, and late-payment interest in the amount of $5,869,436.46, which amount now is due and owing. This judgment shall bear interest at the rate prescribed by 28 U.S.C. § 1961 until paid in full. The clerk is DIRECTED to close this case.

SO ORDERED, this the 30th day of March, 2018.

LOUISE W. FLANAGAN
United States District Judge